IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

     **Plaintiff,**

              **v.**                   **Criminal No.** 15-486 (FAB)

CARLOS CRUZ-RIVERA,

     **Defendant.**

## OPINION AND ORDER

BESOSA, District Judge.

    Defendant Carlos Cruz-Rivera ("Cruz-Rivera") moves the Court for a sentence reduction pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). (Docket No. 100.) For the following reasons, his motion for compassionate release is **DENIED**.

## I.  BACKGROUND

    In mid-2015, Cruz-Rivera, then around 41 years of age, performed three carjackings in Santurce, Puerto Rico. (Docket No. 177 at pp. 5-13.) The first occurred on June 30. Id. at pp. 5-6. Cruz-Rivera apprehended the victim, who was six months pregnant at the time, as she was leaving her car and walking to her residence. Id. at p. 5. Threatening the victim with a revolver, he stole her bank card and ordered her to drive with him to a nearby Banco Popular branch, where he stole $500 from her account. Id. at p. 6. After stealing her money, he groped the

Criminal No. 15-486 (FAB)                                                    2

victim and made sexually charged comments toward her before leaving
the vehicle.  Id.

      The second incident occurred just eleven days later.  Id. at
pp. 6-7.  On July 11, 2015 the victim was buying gas and filling
up one of her car's tires with air, when Cruz-Rivera approached
her with a pistol.  Id. at p. 6.  He ordered her to get in the car
and asked if she had any cash on her.  Id.  When she answered that
she did not, he asked how much she could withdraw at an ATM.  Id.
He ordered her to drive to a Banco Popular branch, where she
withdrew $60 from the ATM and gave it to him.  Id. at p. 7.  He
made verbal, sexually charged insinuations which made the victim
believe that he would rape her.  Id.  After this, he left the
vehicle.  Id.

      The third incident occurred a week later.  Id. at pp. 7-13.
Between July 18 and 19, 2015, the victim was waiting for a friend
in Condado when Cruz-Rivera entered the back seat of her car and
pointed a gun at her.  Id. at p. 7.  He threatened her not to look
at him and ordered her to move to the passenger seat, while he
moved to the driver's seat.  Id. at p. 8.  He asked her how much
money she had in her bank account, and they drove towards Canóvanas
in search of an open ATM.  Id.  With her face covered, the victim
was not sure where Cruz-Rivera was driving her.  Id.  After some
time, he ordered her, at gunpoint, to ingest unspecified pills.

Id. at pp. 8-9.  After arriving at the ATM, he discovered that she did not have much money in her account.  Id. at p. 9.  It is not clear whether he stole any cash.  Id.  After driving around some more, Cruz-Rivera raped the victim in her car.  Id. at pp. 9-10. Next, he took her to a motel where he raped her again.  Id. at pp. 11-12.  He once again forced the victim to get into the car and drive, and after driving some more, he got out of the car and left.  Id. at pp. 12-13.  In all, the third incident lasted several hours.  Id. at p. 41.

Cruz-Rivera was arrested on July 21, 2015.  Id. at p. 13.  On September 9, 2015, a federal grand jury returned a superseding indictment charging him with three counts of carjacking in violation of 18 U.S.C. § 2119(1) (counts one, three, and six), three counts of carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (counts two, four, and seven), and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (count five).  (Docket No. 14.)  Cruz-Rivera pled guilty to the June 30 and July 18-19 carjackings and proceeded to trial on the remaining counts.  See Docket No. 37.  At trial, he argued that the July 11 incident was not a carjacking because he knew the victim - he claimed that she initiated the encounter because she wanted to buy crack cocaine from him.  See Docket No. 177 at p. 19.  He also alleged that none

of the incidents involved an actual firearm because in each case he had a BB gun rather than a real gun.  Id. at p. 20.  Last, he claimed that most of the events described by the third victim on July 18 and 19 were perpetrated by an accomplice.  Id. at pp. 19-20.

After a three-day trial, the jury, apparently not having believed his version of events, found Cruz-Rivera guilty on all counts.  See Docket No. 53 (jury verdict form).  The presiding judge, José A. Fusté, sentenced him to a total of 872 months of imprisonment.  (Docket No. 74 at p. 3.)  He received 180 months for counts one and three, 120 months for count five, and 188 months for count six, these sentences to be served concurrently with each other.  Id.  Most of the length of his sentence came from his section 924(c) convictions on counts two, four, and seven. Section 924(c) convictions for brandishing a firearm carry a seven-year (84-month) mandatory minimum sentence for a first offense and a 25-year (300-month) mandatory minimum sentence for subsequent offenses, each required to run consecutively to each other and to any other sentence.  18 U.S.C. § 924(c)(1)(A)(ii), § 924(c)(1)(C)(i), § 924(c)(1)(D)(ii).  When he was sentenced, multiple section 924(c) convictions from the same case counted as "second or subsequent" convictions subject to the 25-year mandatory minimum.  See United States v. Cruz-Rivera, 137 F.4th

25, 27 (1st Cir. 2025) ("[A]t the time, [section] 924(c) imposed a twenty-five-year mandatory minimum prison sentence for any second or subsequent conviction under its terms, . . . which the Supreme Court had interpreted to encompass even a [section] 924(c) conviction that the defendant received in the same proceeding as he received his first [section] 924(c) conviction . . .") (internal citations omitted).  Accordingly, Cruz-Rivera received a sentence of 84 months on count two, 300 months on count four, and 300 months on count seven, all to run consecutively to each other and to his sentences on the other counts of conviction.  (Docket No. 74 at p. 3.)

Prior to the 2015 carjackings, Cruz-Rivera had an extensive criminal and disciplinary history.  At age 15, he was charged with unlawful possession of a Colt revolver, though the charge was dismissed at the request of the prosecutor.  (Docket No. 177 at p. 32.)  At age 17, he was charged with breaking into an apartment and stealing a victim's car keys, apartment keys, sunglasses, and $60 in cash.  Id. at pp. 32-33.  This charge was dismissed without prejudice.  Id.  At age 18, he broke into the second floor of the Hato Rey Plaza Condominium with intent to commit burglary.  Id. at p. 26.  That same year, he committed an armed robbery at a Big Save Pharmacy in Bayamón.  Id. at pp. 27-29.  In doing so, he unlawfully possessed a firearm and engaged in reckless driving.

Id. At age 23, while imprisoned for the previous offenses, he
escaped from the Río Piedras State Penitentiary, and shortly
thereafter stole a car while threatening the victim with a loaded
firearm. Id. at p. 29. At age 37, while back in prison, he
conspired with other individuals to defraud various banks and
financial institutions through fraudulent checks. Id. at
pp. 29-31. During the two years he was imprisoned for the fraud
offense, he incurred in two disciplinary infractions – one for
possessing a dangerous weapon (a razor blade) and another for phone
abuse. Id. at pp. 31-32. His conduct for the carjacking
convictions occurred six months after he was released for the bank
fraud scheme, while he was still serving a term of supervision.
Id. at pp. 29-30. His supervised release was revoked, and he was
sentenced to an additional 30 months' imprisonment to be served
consecutively to his carjacking sentence. See Case No. 12-cr-341-
16-DRD, Docket No. 636. While imprisoned for his current
convictions, he has incurred in two disciplinary infractions, one
for giving or accepting money without authorization, and another
for possessing drugs or alcohol. See Docket No. 177 at p. 15. In
addition to the above, "NCIC and Atlas records reflect that [Cruz-
Rivera] may have several convictions for charges during 1990 and
1991 in Bronx County Criminal Court [] relat[ing] to grand larceny,
criminal possession of stolen property, unauthorized use of [a]

vehicle and criminal mischief offenses, among others." Id. at
p. 32.)

Five years after he was convicted in the current case, Cruz-
Rivera moved for a sentence reduction pursuant to the First Step
Act of 2018, Pub. L. No. 115-391 (the "First Step Act"). (Docket
No. 100.)  In addition to allowing defendants to file their own
petitions for reduction of sentence, the First Step Act changed
the rules for stacking multiple section 924(c) mandatory minimum
sentences.  Now, for a second conviction to earn the 25-year
mandatory minimum, the "violation [must have] occur[ed] after a
prior conviction under [section 924(c)] . . . bec[a]me final."
18 U.S.C. § 924(c)(1)(C)(i).   In other words, multiple
section 924(c) convictions from the same sentencing are each
subject to the lower seven-year mandatory minimum under section
924(c)(1)(A).  Cruz-Rivera argued that, under the new stacking
rules, he would receive a substantially shorter sentence due to
lower required mandatory minimums. See Docket No. 100 at pp. 5-13.
While the First Step Act amendments are not retroactive, he argued
that the changes constituted an "extraordinary and compelling"
justification for his early release pursuant to 18 U.S.C.
§ 3582(c)(1)(A).  Id.

This Court initially rejected Cruz-Rivera's request.  See
Docket No. 111.  While his appeal was pending, the First Circuit

Court of Appeals decided United States v. Ruvalcaba, 26 F.4th 14 (1st Cir. 2022). Ruvalcaba held that a non-retroactive amendment to sentencing laws could form extraordinary and compelling circumstances for a sentence reduction, and that the district courts must consider these on a case-by-case basis. Id. at 24-28. The First Circuit Court of Appeals vacated this Court's rejection of Cruz-Rivera's motion and remanded with instructions to consider the effects of Ruvalcaba.

The parties submitted briefing on the effects of Ruvalcaba, and whether "stacking" of sentences under section 924(c) could constitute extraordinary and compelling circumstances. See Docket Nos. 118, 125, 126, 131, 132. After reviewing these briefs, the Court again denied Cruz-Rivera's motion for compassionate release in a brief line order. (Docket No. 133.) Cruz-Rivera appealed. (Docket No. 135.)

The First Circuit Court of Appeals again vacated and remanded, finding that the line order did not sufficiently state the grounds for denial. United States v. Cruz-Rivera, 137 F.4th 25 (1st Cir. 2025). While the motion could have been denied either through finding that no extraordinary and compelling circumstances had been established or on the section 3553(a) factors, the First Circuit Court of Appeals found both contentions problematic. The line order did not demonstrate that the Court had, in fact,

performed an evaluation of the section 3553(a) factors. Id. at 31. And with respect to extraordinary and compelling circumstances, the First Circuit Court of Appeals found it impossible to determine whether the Court applied an impermissibly narrow interpretation of Ruvalcaba. This Court might have incorrectly believed that Cruz-Rivera "could not, as a matter of law, satisfy the extraordinary and compelling reasons requirement based only on the factors that he identified," which were "the size of the disparity in his mandatory sentence relative to what that sentence would have been under the nonretroactive amendment to [section] 924(c)'s stacking regime and his age at the time that he received his mandatory sentence." Id. at 32.

The motion for compassionate release is thus back before the Court. The government has asked the Court to deny the motion, arguing that Cruz-Rivera does not have extraordinary and compelling circumstances for a sentence reduction and does not perform well when balancing the section 3553(a) factors. (Docket No. 149.) Cruz-Rivera argues in favor of his motion, claiming his unusually long sentence and medical conditions constitute extraordinary and compelling circumstances for his release and disagreeing with the government on the section 3553(a) factors. (Docket Nos. 157, 165, 171, 191, 194.) The government replied to Cruz-Rivera's second supplemental motion, reiterating their

earlier arguments and asserting that his medical conditions to not meet the thresholds necessary for a sentence reduction. (Docket No. 197.)

## II.  LEGAL STANDARD

Before a defendant may petition a court for a sentence reduction, he or she must exhaust administrative remedies with the Bureau of Prisons ("BOP").  See Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (2018); 18 U.S.C. § 3582(c)(1)(A).  To exhaust administrative remedies, a defendant must first request that the BOP file a motion for compassionate release on his or her behalf. See id.  If the warden refuses, "the defendant may only file a motion in federal court if he has either (1) fully exhausted all administrative rights to appeal the BOP's failure to bring a motion on his behalf; or (2) waited thirty [] days from the receipt of his request by the warden of [his] facility, whichever is earlier." United States v. Morales, Crim. No. 95-235 (MAJ), 2025 U.S. Dist. LEXIS 13217, at *5 (D.P.R. Jan. 24, 2025) (Morgan, M.J.) (citing 18 U.S.C. § 3582(c)(1)(A)).  Defendant Cruz-Rivera has the burden of showing that he exhausted administrative remedies prior to bringing his claim before the Court.  See United States v. Wells, Crim. No. 13-151, 2020 U.S. Dist. LEXIS 139425, at *10 (E.D. La. Aug. 5, 2020).  Exhaustion of administrative remedies is merely a "claim-processing rule" rather than a jurisdictional requirement.

United States v. Texeira-Nieves, 23 F.4th 48, 53 (1st Cir. 2022).
As a result, the government can waive this requirement "either
expressly or by failing to raise it as a defense." United States
v. Pabón-Mandrell, Crim. No. 07-121, 2023 U.S. Dist. LEXIS 229346,
at *12 (D.P.R. Dec. 22, 2023) (Ramos-Vega, M.J.).

Once administrative remedies have been exhausted or waived,
a court may only reduce a term of imprisonment if "extraordinary
and compelling reasons warrant such a reduction."  18 U.S.C.
§ 3582(c)(1)(A)(i).   "The plain meaning of 'extraordinary'
suggests that a qualifying reason must be a reason that is beyond
the mine-run either in fact or in degree." United States v.
Canales-Ramos, 19 F.4th 561, 566 (1st Cir. 2021).  "By the same
token, the plain meaning of 'compelling' suggests that a qualifying
reason must be a reason that is both powerful and convincing."
Id. at 567.

One such extraordinary and compelling circumstance is if a
defendant received an unusually long sentence compared to what he
or she might receive if sentenced today.  See U.S.S.G.

Criminal No. 15-486 (FAB)                                              12

§ 1B1.13(b)(6).[1]   An unusually long sentence may count as
extraordinary and compelling if the defendant has served at least
ten years of imprisonment, and if a change in law (other than a
non-retroactive amendment to the guidelines manual) would produce
a gross disparity between the original sentence and the one likely
imposed today.  Id.  When making that determination, a court must
consider the defendant's individualized circumstances - "a change
in the law, without more, [is insufficient to] comprise an
extraordinary and compelling reason sufficient to warrant
compassionate release."  Canales-Ramos, 19 F.4th at 569.
"[F]actors such as the size of the claimed sentencing disparity
and the defendant's age at sentencing can, in combination, make
the passage of a nonretroactive sentencing amendment an
extraordinary and compelling reason to reduce that particular
defendant's sentence."  Cruz-Rivera, 137 F.4th at 32 (internal
quotation marks omitted).

---

[1] Cruz-Rivera originally filed his motion for compassionate release before the
Sentencing Commission adopted the guideline rule cited above.  At the time he
filed, the First Circuit Court of Appeals understood that "district courts ha[d]
discretion, unconstrained by any policy statement [then] in effect, to consider
whether a prisoner's particular reasons are sufficiently extraordinary and
compelling to warrant compassionate release."  United States v. Rivera-
Rodríguez, 75 F.4th 1, 18 n. 22 (1st Cir. 2023) (quoting Ruvalcaba, 26 F.4th
at 23).  Because the new guidelines have been promulgated, the First Circuit
Court of Appeals "expect[s] district courts to take heed of [them] when
determining whether an individual meets the statute's requirements for such
relief."  Rivera-Rodríguez, 75 F.4th at 18 n. 22; see also United States v.
Nicholas, Crim. No. 7:16-cr-30026, 2024 U.S. Dist. LEXIS 202937, at *14-17 (W.D.
Va. Nov. 6, 2024) (2023 policy statement applies to compassionate release
motions filed before the policy statement took effect).

A defendant may also establish extraordinary and compelling circumstances based on medical conditions.  The policy statement describes several situations where medical conditions may be severe enough to qualify.  One situation is if a defendant is "suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory)."  U.S.S.G. § 1B1.13(b)(1)(A).  Another is if a defendant has a serious condition, from which he or she is not expected to recover, "that substantially diminishes [his or her] ability [] to provide self-care within the environment of a correctional facility . . . ."  Id. § 1B1.13(b)(1)(B).  A third is if a defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."  Id. § 1B1.13(b)(1)(C).  A sentence reduction based solely on a defendant's medical conditions "is an extraordinary and rare event granted only in cases of notable severity."  United States v. Rivera-Figueroa, Crim. No. 16-591-50 (RAM), 2025 U.S. Dist. LEXIS 18129, at *7-8 (D.P.R. Jan. 29, 2025) (Arias, C.J.) (citing United States v. Rivera-Vázquez, Crim. No. 19-300, 2024 U.S. Dist. LEXIS 196663, at *4 (D.P.R. Oct. 29, 2024) (McGiverin, M.J.)).

If a court finds that there are extraordinary and compelling reasons for a sentence reduction, it must still consider the

sentencing factors set forth in section 3553(a), and the reduction must be consistent with "applicable policy statements issued by the Sentencing Commission." See U.S.S.G. § 1B1.13(b)(6); 18 U.S.C. § 3582(c)(1)(A)(ii). Pursuant to section 3553(a), a court must determine if the sentence imposed reflects the seriousness of the offense, promotes respect for the law, provides a just punishment, affords adequate deterrence to criminal conduct, protects the public from additional crimes by the defendant, and provides the defendant with needed educational or vocational training, medical care, or correctional treatment. 18 U.S.C. § 3553(a). Under both the section 3553(a) factors and the policy statements, a defendant's potential dangerousness to the community, evaluated based on his or her criminal history and his or her conduct while incarcerated, is an important factor. See U.S.S.G. § 1B1.13(a)(2) (defendant must not be "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"); 18 U.S.C. § 3553(a) (the sentence must "protect the public from further crimes of the defendant"); United States v. D'Angelo, 110 F.4th 42, 50-52 (1st Cir. 2024) (district court did not err when it "reasonably concluded that D'Angelo's potential dangerousness under [section] 3553(a) outweighed all else"). "[A] supportable determination that the balance of the section 3553(a) factors weighs against a sentence reduction constitutes an independent

reason to deny compassionate release." <u>Texeira-Nieves</u>, 23 F.4th at 55.

## III. DISCUSSION

### A.  Exhaustion of Administrative Remedies

Before filing his original motion for compassionate release in 2020, Cruz-Rivera sent a letter to his warden at USP Tucson requesting that the warden file a motion for reduction of sentence on his behalf. <u>See</u> Docket No. 100 at p. 3; Docket No. 100-1.  The warden apparently never responded to the request. <u>Id.</u>  Additionally, the government never contested that Cruz-Rivera exhausted administrative remedies and had thus waived the issue. <u>See</u> Docket Nos. 102, 125, 149; <u>Pabón-Mandrell</u>, 2023 U.S. Dist. LEXIS 229346, at *12.  Accordingly, pursuant to 18 U.S.C. § 3582(c)(1)(A), Cruz-Rivera has exhausted administrative remedies.  The Court will proceed to analyze the merits of his compassionate release claim.

### B.  Extraordinary and Compelling Circumstances

Cruz-Rivera makes two arguments for extraordinary and compelling circumstances.  First, he argues that his claimed medical conditions – epilepsy, stomach ulcers, chronic kidney disease, microcytosis, proctitis, and intestinal complications related to a salmonella infection – justify a reduction in his sentence. (Docket No. 171 at pp. 1-3; Docket No. 191 at pp. 6, 9.)

Second, he argues that the First Step Act's changes to the mandatory minimum stacking rules for convictions under section 924(c) would result in a substantially shorter sentence if he were sentenced today.  (Docket No. 157 at pp. 4-7; Docket No. 191 at pp. 1-4.)

### i.  Medical Conditions.

Cruz-Rivera claims that his epilepsy, stomach ulcers, chronic kidney disease, microcytosis, proctitis, and intestinal complications related to a salmonella infection constitute extraordinary and compelling circumstances for reducing his sentence.  The Court, however, finds that these conditions do not rise to that level.

Cruz-Rivera brought his arguments concerning his medical conditions in a supplemental motion filed on July 9, 2025. (Docket No. 171.)  At the time, however, he had not received his medical records from the BOP.  See id. at p. 2; Docket No. 183. On July 14, 2025, the Court ordered the government to produce the medical records to defendant (Docket No. 179), which were provided to him on August 11, 2025 (Docket No. 183), and directly to the Court (Docket No. 185).  The Court allowed Cruz-Rivera to supplement his motion with reference to the medical records, which he did on September 7, 2025 (Docket Nos. 184, 191), after being granted an extension of time to do so (Docket No. 189).  He filed

a second supplemental motion on September 8, 2025, which largely repeats his previous arguments.  <u>See</u> Docket No. 194.

While Cruz-Rivera's medical records briefly mention his chronic kidney disease, microcytosis, and proctitis, the records do not provide any information about their severity.  <u>See</u> Docket No. 185-13 at p. 53 (chronic kidney disease); p. 67 (diagnoses of microcytosis and proctitis).  The fact that these conditions are not cited elsewhere implies that they are not yet causing severe symptoms, and Cruz-Rivera does not elaborate on how they constitute extraordinary and compelling circumstances.  <u>See</u> Docket No. 191 at p. 9.  Accordingly, the Court does not consider them extraordinary and compelling to justify a sentence reduction.

The Court finds more detail regarding Cruz-Rivera's epilepsy and gastrointestinal issues in his medical records, but neither rise to the level of extraordinary and compelling circumstances for a sentence reduction.  There is no evidence that either is a late-stage terminal disease like those described in section 1B1.13(b)(1)(A) of the policy statement.  While "[a] specific prognosis of life expectancy (<u>i.e.</u>, probability of death within a specific time period) is not required," the illness must be "serious and advanced[ ,] with an end-of-life trajectory." U.S.S.G. § 1B1.13(b)(1)(A).  Cruz-Rivera's medical records show that he stopped taking prescribed medication for his epilepsy in

June 2020.  See Docket No. 185-9 at pp. 4, 7.  The doctors writing
the progress notes explain that his medication was discontinued
because he was not taking it, though he claims to have been
compliant and that he was simply not receiving refills.  Id.  In
September 2022, the record notes that he "has been off meds" and
that "[h]e has had no seizures in a year."  (Docket No. 185-11 at
p. 1.)  His list of current conditions indicates that his epilepsy
has been in remission since December 2024.  See Docket No. 185-2
at p.58; Docket No. 185-14 at p. 55.  As for his gastrointestinal
issues, "unspecified abdominal pain" is listed as a current
condition in the records, see Docket No. 185-14 at p. 55, but there
is no indication that it constitutes a terminal, end-of-life
disease.  He was hospitalized and underwent surgery in March 2023
after reporting abdominal pain and nausea but was discharged after
surgery without complications.  See Docket No. 185-12 at p. 9
(complaints on March 23), Docket No. 185-13 at pp. 82-85 (notes
from the surgery performed on March 24, discharge noted on
March 28); Docket No. 185-12 at p. 2 (post-discharge follow-up
visit on March 30 noting that his pain is well-controlled, has the
ability to eat, and denies nausea, though he is unsteady on his
feet).  His medical records from 2024 onward do not contain any
indication of continuing issues or worsening conditions.  See
Docket No. 185-13 (medical records from 2024); Docket No. 185-14

(medical records from 2025).  Relatedly, the medical records do not show that these conditions substantially limit his ability to provide self-care within the prison environment.  U.S.S.G. § 1B1.13(b)(1)(B).  Instead, they indicate that his conditions are generally manageable day-to-day.

The medical records also demonstrate that Cruz-Rivera is being provided with adequate medical care.  See U.S.S.G. § 1B1.13(b)(1)(C).  The nearly one thousand-page medical record shows that he has received extensive care, including medications to treat chronic conditions, and surgery to treat acute flare-ups.  See, e.g., Docket No. 185-13 at p. 33 (May 2024 dental procedure extracting erupted tooth), pp. 82-85 (2023 abdominal surgery notes and discharge summary); Docket No. 185-14 at p. 53 (list of active prescribed medications), p. 59 (most recent psychologist interview, July 2025); United States v. Rivera, Crim. No. 21-10245-FDS, 2024 U.S. Dist. LEXIS 118987, at *5 (D. Mass. Jul. 8, 2024) (finding defendant's medical conditions did not amount to extraordinary and compelling circumstances because "it appears that [contrary to his assertions] he *is* receiving substantial medical care") (emphasis in original).  His asseverations to the contrary are unsubstantiated and directly contradict the medical record.

Last, in his second supplemental motion, Cruz-Rivera cites the risk of COVID-19 as an additional factor to establish extraordinary and compelling circumstances for a sentence reduction. See Docket No. 194 at p. 3. "COVID-19 is no longer a significant threat given the availability of highly effective vaccines." United States v. Cassagnol, No. 17-cr-10375-ADB, 2025 U.S. Dist. LEXIS 77214, at *6 (D. Mass. Apr. 23, 2025). The medical records show that Cruz-Rivera has received the two-dose Moderna vaccine. See Docket No. 185-10 at p. 24. Therefore, the Court does not consider his COVID-19 argument persuasive.

Accordingly, Cruz-Rivera fails to show that his medical conditions amount to extraordinary and compelling circumstances for a sentence reduction.

### ii.  Unusually Long Sentence

Cruz-Rivera's second argument for extraordinary and compelling circumstances is that he received an unusually long sentence. Because he was sentenced before the First Step Act's amendments came into effect, two of his three section 924(c) convictions resulted in consecutive 25-year mandatory minimum sentences. He argues that, if sentenced today, he would be subject to a 7-year mandatory minimum on each section 924(c) conviction, resulting in an overall mandatory minimum of 21 years for his three 924(c) convictions rather than 57 years.

The disparity in mandatory minimums created by the First Step Act's changes to the stacking rules is certainly extraordinary – a difference of 36 years. Cruz-Rivera received not one, but two mandatory 25-year sentences, each of which would be subject to a 7-year mandatory minimum today. Apart from his section 924(c) sentences, he is serving 188 months for the rest of his convictions. The section 924(c) convictions constitute over 78 percent of his total sentence. Further exacerbating the severity of his sentence is the fact that he received it when he was 41 years old. While his 72-year sentence would be close to a life sentence for a defendant of any age, at age 41, it almost certainly is.

While the potential disparity and his age when convicted render the sentence he received more "extraordinary," other factors push the other way. He has an extensive criminal history with many previous instances of violence. See Docket No. 177 at pp. 25-33. His conduct in this case was extreme, so much so that the probation office suggested that he may be eligible for an upward sentence enhancement for "conduct [which] was unusually heinous, cruel, brutal, or degrading to the victim." Id. at p. 40; U.S.S.G. § 5K2.8. His treatment of the victim in the July 18-19 incident was particularly egregious. See supra pp. 2-3. He forced the victim to ingest pills at gunpoint without

telling her what the pills were.  Id.  He violently raped her
multiple times, causing bodily injury, during an ordeal lasting
several hours.  Id.  And he has never fully acknowledged his guilt
for these actions.  See Docket No. 177 at pp. 18-22 (detailing
Cruz-Rivera's asserted version of events and noting that he was
not eligible for a reduction to his offense level based on
acceptance of responsibility.)

           Considering the totality of the circumstances, the
Court finds that Cruz-Rivera's sentence is not unusually long to
the point of constituting an "extraordinary and compelling"
circumstance.    His   sentence's   length   is   extraordinary,
particularly considering the changes wrought by the First Step Act
and his age when sentenced.  But Cruz-Rivera's conduct and personal
characteristics were also extraordinary.   The Court does not
consider his case among "the most grievous" for which relief should
be given from the harshness of the former 924(c) stacking rules.
See United States v. McCoy, 981 F.3d 271, 287 (4th Cir. 2020)
("[N]ot all defendants convicted under [section] 924(c) should
receive new sentences, but [] courts should be empowered to relieve
some defendants of those sentences on a case-by-case basis.")
(emphasis in original) (internal quotation marks omitted).  Other
defendants who have been resentenced in light of the First Step
Act's changes to the section 924(c) stacking rules brought much

more compelling cases than Cruz-Rivera.  See, e.g., United States
v. Maumau, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, J.,
concurring) (district court did not err in resentencing in light
of "(1) Maumau's extraordinarily long sentence, especially in
comparison to the significantly shorter sentences Maumau's co-
defendants received for substantially similar conduct; (2) the
government's plea offer before trial was only 10 years; and
(3) Maumau's young age at the time of his sentence"); United States
v. Díaz-Castro, Crim. No. 10-333-4 (RAM), 2022 U.S. Dist. LEXIS
191841, at *10-11 (D.P.R. Oct. 19, 2022) (Arias, C.J.) (reducing
sentence of a defendant who received stacked mandatory minimums
under the pre-First Step Act section 924(c) rules when defendant
had no prior criminal history and demonstrated substantial
rehabilitation efforts).

        Accordingly, Cruz-Rivera has not shown
extraordinary and compelling circumstances justifying a reduction
in his sentence.  Neither his medical conditions nor his lengthy
sentence, individually or considered together, rise to the level
where a sentence reduction would be justified.

    **C.  Guidelines and Sentencing Factors**

        While a district court is not required to analyze the
section 3553(a) factors if it does not find extraordinary and
compelling circumstances warranting release, appellate "review is

aided . . . when the district court takes the additional step of making a section 3553(a) determination." <u>Texeira-Nieves</u>, 23 F.4th at 52. The Court finds that reducing Cruz-Rivera's sentence would not be consistent with the section 3553(a) factors.

        Both the sentencing guidelines and the section 3553(a) factors require the Court to analyze whether a defendant's early release would endanger the community. The sentencing guidelines instruct courts to consider the factors listed in 18 U.S.C. § 3142(g) when determining whether a defendant's release would endanger the community, and "courts may exercise discretion and apply the mentioned factors to determine whether these suggest the defendant is more or less likely to reoffend." <u>United States v. Colón-Nales</u>, Crim. No. 03-278 (RAM/BJM), 2024 U.S. Dist. LEXIS 208133, at *14 (D.P.R. Nov. 14, 2024) (McGiverin, M.J.); <u>see also</u> U.S.S.G. § 1B1.13(a)(2). The factors include the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the defendant's criminal history, whether he had a history of violence, his physical and mental condition, and release conditions. 18 U.S.C. § 3142(g). Evidence of a defendant's rehabilitation while incarcerated is also helpful in evaluating his or her likely conduct post-release. <u>See, e.g.</u>, <u>United States v. Viera-Rivera</u>, Crim. No. 94-391 (SCC), 2025 U.S. Dist. LEXIS 79378, at *23-24 (D.P.R. Apr. 23, 2025) (Ramos-Vega,

M.J.) (finding defendant's release did not pose a danger to the community after considering various factors, including his rehabilitation).

The Court finds that Cruz-Rivera would be a danger to the community if released. With the reduction he asks for, he would be 78 years old at the end of his sentence, which weighs against a finding that he could be dangerous. Cruz-Rivera does not, however, put forward a compelling case for his rehabilitation. While the amended presentence report shows that he has completed numerous educational courses, he has not been able to maintain a clean disciplinary record while incarcerated. See Docket No. 177 at pp. 15, 36. He claims to suffer from several medical conditions, but these do not appear to render him incapacitated. See supra pp. 16-20. Notably, he has never fully acknowledged his guilt. While he pled guilty to two of the carjackings, he fabricated excuses with respect to each – claiming that he was not using a real firearm, that the second carjacking was performed on the invitation of the victim, and that most of the conduct in the third carjacking was performed by someone else. See Docket No. 177 at pp. 18-22. The record, therefore, does not show that Cruz-

Rivera has reformed or repented, which reflects poorly on his prospective risk of recidivism.

Additionally, even if Cruz-Rivera had made a stronger case for rehabilitation, his long history of criminal conduct is a steep hill for him to climb to show that his release would not endanger the community.  This history is extensive, beginning when he was 15 years old and continuing until his current convictions, which occurred when he was 41 years old.  See supra pp. 5-6.  He has, at various points, shown a contempt for the law, violating the conditions of his supervised release term, and even breaking out of prison.  Id.  Many of his crimes involved violence or the threat of violence, including his current conviction.  Id.; Docket No. 177 at pp. 23-24 (reflecting sentencing enhancements for abductions and, in one case, causing severe bodily injury to a victim).  Many of his past criminal acts involved unauthorized firearms.  Supra pp. 5-6.  His offenses in the current case occurred just six months after he was released from prison for previous crimes.  Supra p. 6.  Having reoffended at 41 years old, he also bucked the trend that older defendants are less likely to recidivate.  See United States Sentencing Comm'n, The Effects of Aging on Recidivism Among Federal Offenders, 3 (December 2017), https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders.  Even accounting for his

advanced age upon release, the Court is not confident that Cruz-Rivera would not reoffend and cause harm to the public.

The remaining 3553(a) factors do not weigh strongly enough in Cruz-Rivera's favor to outweigh his potential dangerousness. On the one hand, Congress's amendment of the stacking rules through the First Step Act reflects an acknowledgement that the old rules provided punishments beyond what was just and necessary to reflect the seriousness of the offense and promote respect for the law, a point that weighs in Cruz-Rivera's favor. On the other hand, his extensive criminal history, the brutal manner in which he committed his current offenses, and his refusal to acknowledge guilt merit a harsher punishment than a similarly situated defendant without these characteristics. When weighed against his potential dangerousness to the community, the Court finds that Cruz-Rivera has not

established a meritorious claim for a reduced sentence under the section 3553(a) factors.

**IV.  CONCLUSION**

For the reasons set forth above, Cruz-Rivera's motion for compassionate release is **DENIED**.  (Docket No. 100.)

The Re-Sentencing hearing scheduled for September 15, 2025 (Docket No. 180) is **VACATED.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 15, 2025.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE